## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOE JESSE MONGE and | § | CASE NO. 09-30881-hcm |
| ROSANA ELENA MONGE, | § | CHAPTER 7 |
| | § | |
|     Debtors. | § | |
| | § | |
| THE LAW OFFICES OF MICHAEL R. | § | |
|     NEVAREZ, A PROFESSIONAL | § | |
|     CORPORATION, | § | |
|     d/b/a THE NEVAREZ LAW FIRM, PC | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. _____ |
| | § | |
| JOE JESSE MONGE and | § | |
| ROSANA ELENA MONGE, | § | |
| | § | |
|     Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT TO OBJECT TO DISCHARGEABILITY OF DEBT, AND THE DISCHARGE OF DEBTORS

# TABLE OF CONTENTS

I.      CORE JURISDICTION. ................................................................................ 5

II.     THE PARTIES AND SERVICE. ................................................................... 5

III.    JURISDICTION AND VENUE. .................................................................... 6

IV.     FACTUAL BACKGROUND. ........................................................................ 7

      A.      The Original Bankruptcy Petition, Schedules And Plan. ........................ 7

      B.      Defendants Filed Misstatements And Omissions In Defendants' Schedules. ........ 8

            1.      Defendants Failed To Disclose All Real Properties Owned By Defendants. ....................................................................................... 8

            2.      Defendants Falsely Claimed A Homestead Exemption. ............................ 8

            3.      Defendants Failed To Disclose Executory Contracts And Unexpired Leases. ................................................................................. 9

      C.      The Outstanding Debt Owed By Defendants Was Obtained, By Defendants, Through Defendants' False Pretenses, False Representations, And/Or Actual Fraud. ............................................................................ 10

            1.      Defendants Entered Into A Retainer Agreement With Plaintiff For Legal Representation. ................................................................. 10

            2.      Defendants Entered Into A Second Retainer Agreement With Plaintiff For Legal Representation. ......................................................... 14

            3.      The Adversary Proceeding In The Jayme/Rojas Bankruptcy Case. ......... 15

            4.      Defendants Breached The Agreement, And The RICO Agreement, By Failing To Pay Plaintiff. ............................................................. 15

            5.      Defendants Converted Their Bankruptcy Case To Chapter 7 To Avoid The Debt Owed To Plaintiff Under The Agreement And The RICO Agreement. .................................................................... 16

            6.      Defendants Took And Converted Plaintiff's Work Product, Produced Under The Agreement And RICO Agreement, And Delivered It, Without Authorization, To Another Attorney To Pursue The RICO Action Against Alicia Rojas, Francisco Jayme, And Various Other Parties. ................... 17

      D.      The Outstanding Debt Owed By Defendants Was Obtained, By Defendants, Through Defendants' Use Of A Statement In Writing. ........................ 21

      E.      The Outstanding Debt Owed By Defendants Was Created And Obtained, By Defendants, Through Defendants' Fraud Or Defalcation While Acting In A Fiduciary Capacity, Embezzlement, And/Or Larceny. ......................... 22

      F.      The Outstanding Debt Owed By Defendants Was Obtained, By Defendants, Through Defendants' Willful And Malicious Injury To Plaintiff Herein. ........... 23

      G.      Defendants' Misstatements And Omissions In Defendants' Amended Schedules. . ................................................................................... 24

1. Defendants Failed To Disclose All Real Properties Owned By Defendants. .................................................................................................... 24

2. Defendants Falsely Claimed The Poplar Property As A Homestead. ...... 25

3. Defendants Falsely Stated The Value Of Their Vehicles. ........................ 28

4. Defendants Falsely Claimed Exemptions On Their Vehicles.................. 29

5. Defendants Falsely Listed Creditors Who Had Already Been Paid. ........ 30

6. Defendants Falsely Stated Their Income. ................................................ 31

7. Defendants Falsely Claimed Three (3) Dependants. ............................... 32

H. Defendants Filed Misstatements And Omissions In Defendants' Form 22A-1. .. 33

1. Defendants Falsely Claimed Texas Residency. ....................................... 33

2. Defendants Falsely Stated Their Income. ................................................ 34

3. Defendants Falsely Stated Their Family Size. ......................................... 35

4. Defendants Falsely Stated Their Residency, Income, And Family Size In Order Avoid A Presumption Of Abuse.................................................... 35

I. Defendants, In The Meeting of Creditors, Confirmed Their Misstatements And Omissions In Their Amended Schedules.............................................................. 37

J. Defendants Failed And/Or Refused To File Federal Tax Returns....................... 37

K. Defendants Failed And/Or Refused To Obey A Lawful Order Of The Court...... 39

L. Defendants' Statements And Schedules Are "Inconsistent" And Not "Believable." .................................................................................................................. 40

V. OBJECTION TO DISCHARGE OF DEBTOR UNDER 11 U.S.C. §727...................... 41

VI. OBJECTION TO DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §523. ........... 44

VII. OBJECTION TO DISCHARGEABILITY OF DEBT AS A MATTER OF LAW. ........ 46

A. Plaintiff Was Hired By Defendants, As Reorganized Debtors, Outside The Estate. .................................................................................................................. 46

B. Plaintiff Holds A Claim Against Defendants, Outside The Estate, As Well As A Legal, Statutory, And Equitable Lien, For Proceeds From The Final Judgment Proceeds, And For A Percentage Of The Proceeds From Any RICO Action. ..... 47

C. The Property Was Abandoned, And Therefore Plaintiff's Claim And Statutory, Contractual, And Equitable Liens Followed The Abandoned Property Out Of The Estate.................................................................................................................. 48

1. When The Property Was Abandoned To Defendants, The Chapter 7 Estate Lost All Interest And Rights In The Abandoned Property. ..................... 48

2. A Lien Remains Attached To Property Following Abandonment............ 49

3. The Bankruptcy Court Here Thus Lacks Jurisdiction Over Plaintiff's Lien. .................................................................................................................. 49

     D.     As The Abandoned Property Was Entirely Removed From The Jurisdiction Of This Court, Plaintiff As A Matter Of Law Is Entitled To Pursue The Claim And Enforce The Lien Against Defendants In Another Court With Competent Jurisdiction. ....................................................................................................... 50

VIII.    ATTORNEYS FEES AND COSTS. ............................................................................ 51

IX.    PRAYER FOR RELIEF. ............................................................................................. 52

Plaintiff's Original Complaint To Object To Dischargeability Of Debt, And The Discharge Of Debtors
*The Law Offices Of Michael R. Nevarez v. Joe Jesse Monge and Rosana Elena Monge*
USBC-WDTX, El Paso Division, Adversary Number                        Page 4 of 54

**TO THE HONORABLE BANKRUPTCY JUDGE H. CHRISTOPHER MOTT:**

**NOW COMES** THE LAW OFFICES OF MICHAEL R. NEVAREZ, A
PROFESSIONAL CORPORATION d/b/a THE NEVAREZ LAW FIRM, PC (hereinafter
referred to as "Plaintiff"), by and through the undersigned counsel, and hereby files and asserts
this "Plaintiff's Original Complaint To Object To Dischargeability Of Debt, And The Discharge
Of Debtors" (hereinafter referred to as the "Original Complaint") against JOE JESSE MONGE
and ROSANA ELENA MONGE (hereinafter jointly referred to as "Defendants" and/or
"Debtors") (with Plaintiff and Defendants hereinafter jointly referred to as "Parties"), and
respectfully shows unto the Court the following:

## I.     CORE JURISDICTION.

1.      This is a core proceeding over which this Court has jurisdiction pursuant to Title
28 U. S. C. §157(b), in that the above-styled and numbered cause arises under Title 11, Chapter
7, of the United States Code, and is an adversary proceeding objecting to (a) the dischargeability
of outstanding debt of **Three Hundred Eleven Thousand One Hundred Seventy-Seven
Dollars and Ninety-Three Cents ($311,177.93)**, owed by Defendants to Plaintiff, and (b) the
discharge of Debtors, pursuant to 11 U.S.C. §§523, 727, and 1328, 28 U.S.C. §1334, and Fed. R.
Bankr. P. 4004 and 7001.

## II.     THE PARTIES AND SERVICE.

2.      Plaintiff, THE LAW OFFICES OF MICHAEL R. NEVAREZ, A
PROFESSIONAL CORPORATION d/b/a THE NEVAREZ LAW FIRM, PC, is a professional
corporation organized under the laws of the State of Texas.

3.      Defendant, JOE JESSE MONGE (hereinafter referred to as "JOE MONGE"), is

an individual who resides in the State of California, and may be served with process at his usual place of residence, 343 N. Marin Privado, Ontario, California 91764, or wherever JOE MONGE may be found.  JOE MONGE has made an appearance in this case, and therefore no service of process is necessary.

4.      Defendant, ROSANA ELENA MONGE (hereinafter referred to as "ROSANA MONGE"), is an individual who resides in the State of California, and may be served with process at her usual place of residence, 343 N. Marin Privado, Ontario, California 91764, or wherever ROSANA MONGE may be found.  ROSANA MONGE has made an appearance in this case, and therefore no service of process is necessary.

### III.      JURISDICTION AND VENUE.

5.      This Court has subject matter jurisdiction herein pursuant to 28 U.S.C. §§157 and 1334, and 11 U.S.C. §§523, 727, and 1328.

6.      The subject matter in controversy is within the jurisdictional limits of this Court.

7.      This Court has personal jurisdiction over the Parties because Plaintiff and Defendants have voluntarily submitted themselves to the jurisdiction of this Court, and Plaintiff has its principal place of business in El Paso County, Texas.

8.      Venue in the United States Bankruptcy Court for the Western District of Texas, El Paso Division, is proper pursuant to 28 U.S.C. §1409, "Venue Of Proceedings Arising Under Title 11 Or Arising In Or Related To Cases Under Title 11", as this suit arises under, or is related to, Title 11 of the United States Code, challenging the discharge of Debtors, and the dischargeability of an outstanding debt, in a Title 11 case filed by the Defendants in this Court.

## IV.  FACTUAL BACKGROUND.

### A.  The Original Bankruptcy Petition, Schedules And Plan.

9.  On April 27, 2009, Defendants filed a Voluntary Petition for bankruptcy relief, under Chapter 11 of Title 11, United States Code, in the United States Bankruptcy Court for the Western District of Texas, El Paso Division, Case Number 09-30881-hcm.  (DOC# 1).

10.  Debtors remained in possession of their property, and operated their business as Debtors in Possession, represented at the time by Sidney J. Diamond of Diamond Law (hereinafter jointly referred to as "DIAMOND"), according to his "Application To Employ Sidney J. Diamond As Attorney For Debtor-In-Possession".  (DOC# 6).

11.  On June 8, 2009, Defendants filed their schedules (DOC# 24) (hereinafter referred to as the "Schedules") in this bankruptcy case.

12.  On May 10, 2010, Debtors' Chapter 11 First Amended Plan of Reorganization was filed with the Court.  (DOC# 69) (hereinafter referred to as the "Plan").

13.  The Plan expressly provides for an Adversary Proceeding filed on behalf of the Debtors to "establish their ownership of the property located at 105 Thorough Bred [sic] Court", the eviction of the occupants, and damages in the form of rent, so as to satisfy the Chapter 11 "Class 3 - Secured Claim of BAC Home Servicing LP."  (DOC# 69, Page 4 of 10).

14.  The Plan established no deadline for the presentation of administrative claims arising in the AP or the Chapter 11 case, and contemplated the Chapter 11 proceedings would continue until entry of a final non-appealable order was entered in the AP.[1]  (DOC# 69, Page 4 of 10).

---

[1]  The AP is currently under appeal, so a final non-appealable order has not yet been entered.

**B.      Defendants Filed Misstatements And Omissions In Defendants' Schedules.**

**1.      Defendants Failed To Disclose All Real Properties Owned By Defendants.**

15.      Schedule A of Defendants' Schedules listed a number of real properties owned by Defendants.  (DOC# 24, Page 1).

16.      However, Defendants' failed to disclose, on their Schedule A, all real properties actually owned by the Defendants.  Specifically, Defendants withheld disclosure to the Court, and their creditors, of the following real property, even though they very clearly owned the real property at the time.  (Compare Schedule A, DOC# 24, Page 1):

    a.      334 Poplar, Santa Teresa, New Mexico (hereinafter referred to as the "Poplar Property").[2]

17.      Thus, Defendants failed to disclose, on their original Schedules, all real properties owned by the Defendants.

**2.      Defendants Falsely Claimed A Homestead Exemption.**

18.      Included in Debtors' original Schedules was Debtors' Schedule C, in which Debtors claimed an exemption, under 11 U.S.C. §522(d)(1), for the House and Lot located at 51 Sierra Crest, El Paso, Texas.  (DOC# 24, Page 8).

19.      However, at the time of the filing of the original Schedules, Debtors were not residing at House and Lot located at 51 Sierra Crest, El Paso, Texas (hereinafter referred to as the "Sierra Crest Property"), because the Sierra Crest Property was completely uninhabitable, having been condemned, due to substantial structural damage to both the house and the retaining wall for the lot.

---

[2]  The Poplar Property is also known as 334 Poplar Ct., Sunland Park, New Mexico 88063.

20.     Thus, the Debtors falsely claimed an exemption, under 11 U.S.C. §522(d)(1), for the Sierra Crest Property.

**3.      Defendants Failed To Disclose Executory Contracts And Unexpired Leases.**

21.     Defendants were required to list all executory contracts and unexpired leases on Schedule G of Defendants' Schedules.  (DOC# 24, Page 23).  This requirement includes "any timeshare interests".  (DOC# 24, Page 23).

22.     However, Defendants failed to disclose any unexpired executory contracts on the Schedules.  (DOC# 24, Page 23).  Specifically, Defendants failed to disclose the "Real Estate Contract", an unexpired executory contract, filed in the real property records of Dona Ana County, New Mexico, on June 7, 2004, as Instrument Number 0418416 (hereinafter referred to as the "Poplar Contract"), whereby Defendants agreed to convey the Poplar Property to Bernard Vela (hereinafter referred to as "Vela") and Maria Ramirez (hereinafter referred to as "Ramirez").

23.     Additionally, Defendants failed to disclose their "timeshare interests" on the Schedules.  (DOC# 24, Page 23).  Specifically, Defendants failed to disclose the following timeshare interests:

       a.      Star Island Condo
               Vacation Break Resorts Time Share
               Timeshare at Star Island, 5000 Ave of Stars,
               Kissimmee, FL 34746 - Contract #83-35611,
               Unit/Week 19467/35; and,

       b.      Wyndham Vacation Resorts Time Share.

24.     Thus, Defendants failed to disclose, on their Schedules, the Poplar Contract, or any of Defendants' timeshare interests.

## C.     The Outstanding Debt Owed By Defendants Was Obtained, By Defendants, Through Defendants' False Pretenses, False Representations, And/Or Actual Fraud.

### 1.     Defendants Entered Into A Retainer Agreement With Plaintiff For Legal Representation.

25.     On June 10, 2010, Defendants filed an Adversary Proceeding in the Bankruptcy Court, against Alicia Rojas and Francisco Javier Jayme, in *Monge v. Rojas et al.*, United States Bankruptcy Court for the Western District of Texas (El Paso Division), Adversary Proceeding No. 10-3019 (hereinafter referred to as the "AP").

26.     Debtors have admitted they were Debtors-in-Possession at the time of the filing of the AP.  (DOC# 212, Page 4, Paragraph 13) ("[Debtors] were Debtors-in-Possession until their Plan reached its effective date, and they retained afterwards all estate property except 51 Sierra Crest.").  Consequently, pursuant to Section 1107(a), when the Debtors employed DIAMOND, and filed the AP, Debtors had substantially the same powers and responsibilities as a trustee under the Bankruptcy Code, as Debtors-In-Possession, in accordance with the Plan.

27.     On July 13, 2010, subsequent to the Debtors' employment of DIAMOND, and the filing of the AP, the Bankruptcy Court issued an "Order Confirming Debtors' Chapter 11 Plan Small Business (Small Business Debtor Case)" (DOC# 97), confirming the Defendants' Plan. When the Plan was confirmed and property of the Estate vested in the Defendants, as Reorganized Debtors, the Reorganized Debtors were free to employ attorneys and other professional persons, without obtaining authority from the Court to do so.  See 11 U.S.C. §§ 327(a), 1107(a).

28.     Subsequently, on September 7, 2011, Defendants entered into a retainer agreement with Plaintiff (hereinafter referred to as the "Agreement"), whereby Defendants, as Reorganized Debtors, agreed to hire Plaintiff to replace DIAMOND, and represent Defendants in the recovery of damages against Alicia Rojas and Francisco Jayme.  (DOC# 297-1).

29.     Plaintiff entered into the Agreement, relying on Defendants' oral and written assertions that Defendants would make all required payments in accordance with the Agreement.

30.     On October 20, 2011, pursuant to said Agreement, Plaintiff entered an appearance as counsel of record in the AP.  (AP DOC# 50).

31.     On November 1, 2012, Plaintiff, on behalf of Defendants herein, filed "Plaintiffs' Third Amended Complaint To Recover And For Turnover Of Property And For Attorney's Fees And Damages" (AP DOC# 96) (hereinafter referred to as the "Third Amended Complaint"), in the AP, based on contractual breaches, bank fraud, fraud, mortgage fraud, and the Racketeer Influenced & Corrupt Organizations Act ("RICO"), against Alicia Rojas, Francisco Javier Jayme, and additional parties.

32.     A week later, on November 08, 2012, Plaintiff filed an Unopposed Motion for Removal and Substitution of Counsel, requesting and Order from this Court approving Plaintiff as substitute counsel of record in the AP.  (AP DOC# 102).

33.     That same day, November 08, 2012, this Court granted the Unopposed Motion for Removal and Substitution of Counsel, and issued an Order approving Plaintiff as substitute counsel of record in the AP, thereby replacing DIAMOND in the AP.  (AP DOC# 104).

34.     Also on November 08, 2012, this Court granted the Unopposed Motion for

Removal and Substitution of Counsel, filed by Applicant on same date, therein approving Applicant as substitute counsel of record in the Chapter 11 bankruptcy proceedings, thereby replacing DIAMOND in the Defendants' Chapter 11 proceedings.  (DOC## 173/175).

35.     On December 13, 2012, the Bankruptcy Court issued an "Order Granting Motion To Strike Plaintiffs' Third Amended Complaint And Dismissing Certain Causes Of Action And Certain Defendants Without Prejudice" (AP DOC# 134), which dismissed the causes of action first raised in the Third Amended Complaint, "without prejudice to [Defendants herein] re-filing such additional causes of action in another appropriate forum".  (AP DOC# 134, Page 2, Paragraph 2).

36.     On August 25, 2014, Applicant filed a Fee Application in the AP, seeking the payment of post-confirmation attorneys fees and costs, for the period covering April 27, 2009, through August 25, 2014.  (AP DOC# 358).

37.     On September 5, 2014, in said AP, this Court issued its "Proposed Findings Of Fact And Conclusions Of Law With Respect To Trial In Adversary Proceeding No. 10-03019" (AP DOC# 364), wherein the Reorganized Debtors were awarded:

a.      The turnover of valuable real estate located at 105 Thoroughbred Court, Santa Teresa, New Mexico;

b.      Actual damages in the amount of Seven Hundred Seventeen Thousand Five Hundred Six Dollars ($717,506.00);

c.      Thirty-Nine Thousand Six Hundred Ten Dollars ($39,610.00), as monthly rental payments from September 2014 through January 2015;

    d.       Monthly rent thereafter on the Thoroughbred Property in the amount of Seven Thousand Nine Hundred Ninety-Two Dollars ($7,992.00) per month;

    e.       Prejudgment interest of Eight Point Forty-Three Percent (8.43%) per annum, accruing from April 29, 2008, until the date of the Final Order, computed as simple interest;

    f.       Two Hundred Forty Thousand Two Hundred Thirty-Eight Dollars ($240,238.00) in attorneys' fees and expenses; and,

    g.       Post-judgment interest, on all sums awarded, at a rate of Point Eighteen Percent (0.18%) per annum, compounded annually.

38.     On January 27, 2015, a favorable "Final Judgment" and an "Order Adopting In Part Proposed Findings Of Fact And Conclusions Of Law" were entered in *Monge v. Rojas et al.*, by the United States District Court for the Western District of Texas (El Paso Division), in Case 3:14-cv-00385-PRM, after *de novo* review, therein sustaining all of the above findings and conclusions of the Bankruptcy Court, and thereby resulting in a benefit to the Estate of Defendants herein. (ECF## 10 and 11) (hereinafter referred to as the "Order" and "Final Judgment", respectively).

39.     In accordance with the Agreement, on February 26, 2015, Plaintiffs filed with United States District Court for the Western District of Texas (El Paso Division), a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit, therein appealing certain findings and conclusions contained in the Order.

Plaintiff's Original Complaint To Object To Dischargeability Of Debt, And The Discharge Of Debtors
*The Law Offices Of Michael R. Nevarez v. Joe Jesse Monge and Rosana Elena Monge*
USBC-WDTX, El Paso Division, Adversary Number           Page 13 of 54

40.     On March 3, 2015, Alicia Rojas and Francisco Javier Jayme filed for bankruptcy under chapter 7, in the United States Bankruptcy Court for the District of New Mexico, Cause Number 15-10504-t7 (hereinafter referred to as the "Jayme/Rojas Bankruptcy Case"), seeking to discharge all debt owed, to Defendants herein, in the above-described Final Judgment.

**2.      Defendants Entered Into A Second Retainer Agreement With Plaintiff For Legal Representation.**

41.     On March 13, 2015, a second Retainer Agreement (hereinafter referred to as the "RICO Agreement") was executed jointly by Plaintiff and Defendants, as Reorganized Debtors in Possession, engaging Plaintiff herein for the prosecution of civil causes of action against Alicia Rojas, Francisco Jayme, and various other parties.  (DOC #295-2).

42.     Under the RICO Agreement, Plaintiff was charged with modifying the Third Amended Complaint, for filing in the United States District Court for the Western District of Texas, so as to assert on behalf of the Defendants causes of action based on (a) contractual breaches, bank fraud, fraud, mortgage fraud, (b) the *qui tam* provisions of the False Claims Act ("FCA"), 28 U.S.C. §1331, and 31 U.S.C. §3732, and (c) the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, and 18 U.S.C. §1964.  All of said causes of action (all of which are hereinafter referred to as the "RICO Action") were to be filed in 2015. (DOC #295-2).

43.     Significantly, the RICO Agreement included a Contingent and Deferred Hourly Fee Agreement, whereby the Plaintiff and Defendants agreed to (a) defer the Defendants' payment of any and all attorneys fees of Michael R. Nevarez ($250.00 per Hour), (b) in exchange for the payment to Plaintiff of Forty percent (40%) of the "net recovery" of the RICO Action, and (c) a monthly payment plan for Defendants, with a maximum payment of Five

Thousand Dollars ($5,000.00) per month, as monthly compensation for legal work of Plaintiff's staff. (DOC #295-2).

44.     Plaintiff entered into the RICO Agreement, relying on Defendants' oral and written assertions that Defendants would make all required payments in accordance with the RICO Agreement.

**3.     The Adversary Proceeding In The Jayme/Rojas Bankruptcy Case.**

45.     In accordance with the Agreement, on April 3, 2015, Plaintiff entered an appearance in the Jayme/Rojas Bankruptcy Case, on behalf of the Defendants.

46.     On July 16, 2015, Plaintiff met with Defendants and provided Defendants with a paper copy of the latest draft of a Complaint as an Objection to Discharge and Dischargability (hereinafter referred to as "Draft Complaint"), prepared by Plaintiff, that was to be filed by Plaintiff in the Jayme/Rojas Bankruptcy Case, on behalf of the Defendants.

47.     On August 3, 2015, Plaintiff filed, on behalf of the Defendants, the Fourth Motion To Compel Production Of Unredacted Documents, And For Extension Of Deadline To Objection To Discharge And Dischargeability.

48.     On August 12, 2015, upon Emergency Hearing in the Jayme/Rojas Bankruptcy Case, Plaintiff obtained on behalf of the Defendants an extension to September 30, 2015, as the deadline for Defendants to file an Objection to Discharge and Dischargeability in the Jayme/Rojas Bankruptcy Case.

**4.     Defendants Breached The Agreement, And The RICO Agreement, By Failing To Pay Plaintiff.**

49.     On August 12, 2015, an invoice and a statement were sent to Defendants seeking

payment of the monthly amount due, in accordance with the terms of said Agreement and/or the
RICO Agreement.

50.     On August 19, 2015, Defendants failed and refused to pay the required monthly
payment due under the RICO Agreement, plus the outstanding amounts due under the
Agreement, which are still due and payable to Plaintiff.

51.     On August 19, 2015, Defendants stated to Plaintiff via telephone and email that
they would make no more monthly payments, as required under the terms of the Agreement and
the RICO Agreement, thereby constituting a breach of contract by Defendants, and compelling
Plaintiff to stop work under the Agreement and the RICO Agreement, and accelerate the
outstanding debt due and payable to Plaintiff.

**5.      Defendants Converted Their Bankruptcy Case To Chapter 7 To Avoid The
        Debt Owed To Plaintiff Under The Agreement And The RICO Agreement.**

52.     Upon information and belief, as of August 19, 2015, Defendants operated post-
confirmation in accordance with the Plan, and paid all of its pre-petition priority and secured
claims in conformity with the terms of the confirmed Plan.  Effectively, the confirmed Plan had
been substantially consummated, and all of the allowed claims had been paid in accordance with
the provisions of the Plan, and the U.S. Bankruptcy Code (except, in accordance with the Plan,
debts related to and running with the surrendered property of Defendants).

53.     On September 4, 2015, sixteen (16) days after Defendants breached the
Agreement and the RICO Agreement, Defendants filed, in this Court, their "Debtors' Emergency
Motion to Convert Case to Chapter 7 Liquidation", therein singling out the outstanding amounts
due Plaintiff as the sole basis for the motion to convert.  (DOC# 212).

**6. Defendants Took And Converted Plaintiff's Work Product, Produced Under The Agreement And RICO Agreement, And Delivered It, Without Authorization, To Another Attorney To Pursue The RICO Action Against Alicia Rojas, Francisco Jayme, And Various Other Parties.**

54. On September 21, 2015, Plaintiff informed the Court in the Jayme/Rojas

Bankruptcy Case that Defendants had converted their case to Chapter 7, and a Chapter 7 Trustee

had been appointed in the Defendants' bankruptcy case. The Court granted an extension for the

Defendants to file their Objection to Discharge and Dischargability, in the Jayme/Rojas

Bankruptcy Case.

55. On October 23, 2015, Randolph N. Osherow, the Chapter 7 Trustee in this case,

filed a "Notice Of Abandonment Of Debtor's Personal Property Pursuant To Bankruptcy Rule

6007(a) (Including 21-Day Notice)" (DOC# 240) (hereinafter referred to as the "Notice Of

Abandonment"), notifying the Court of the Trustee's intention to abandon the following

property:

> All litigation rights and claims which the Debtors have pending against Alicia Rojas (aka Alicia Jayme, aka Alicia Rejas de Jayme) and Francisco Javier Jayme (aka Francisco J. Jayme) in the United States Court of Appeals for the Fifth Judicial Circuit (appeal from USDC No. 3:14-CV-305), in the United States Bankruptcy Court for the Western District of New Mexico (Case No. 15-10504-t7), in the Third Judicial District Court, Dona Ana County, New Mexico (D-307-CV -200700398), as well as any other claims, filed or yet to be filed in any court, related to the foregoing litigation, against Alicia Rojas and Francisco Javier Jayme and/or any third parties who acted in concert with them.

(hereinafter referred to as the "Abandoned Property").

56. Three (3) days later, on October 26, 2015, Carlos M. Quinonez (hereinafter

referred to as "Quinonez"), Attorney at Law, filed an appearance in the Jayme/Rojas Bankruptcy

Case, as a sole practitioner, on behalf of the Defendants.

57. That same day, October 26, 2015, Quinonez participated in a hearing in the

Jayme/Rojas Bankruptcy Case, on behalf of the Defendants, wherein (a) Randolph N. Osherow, the Chapter 7 Trustee, notified the Court in the Jayme/Rojas Bankruptcy Case, of the Notice of Abandonement, and (b) Quinonez therein requested an extension of time for the Defendants to file their Objection to Discharge and Dischargability, in the Jayme/Rojas Bankruptcy Case.

58.     Exactly a week later, on November 2, 2015, Quinonez filed a twenty-three (23) page "Complaint Objecting To Discharge Of Debts Under 523 And Objections To Discharge Under 727" (Jayme/Rojas Bankruptcy Case DOC# 109) (hereinafter referred to as the "NM Complaint") on behalf of the Defendants herein, in the Jayme/Rojas Bankruptcy Case, thereby beginning an Adversary Proceeding against Alicia Rojas and Francisco Jayme (hereinafter referred to as the "NM AP").

59.     Upon information and belief, the NM Complaint was prepared, by Quinonez, with work product created by Plaintiff herein, and delivered to Quinonez, by the Defendants herein. Upon information and belief, Quinonez used the Third Amended Complaint, and the Draft Complaint provided to the Defendants, by Plaintiff, to prepare the NM Complaint.

60.     Upon information and belief, the NM Complaint was prepared, by Quinonez, with the assistance of a former employee of Plaintiff, who had been hired by Plaintiff, at the request of Defendants, so as to provide paralegal services to the Defendants, on behalf of Plaintiff, concerning the RICO Action.

61.     Upon information and belief, Quinonez, and/or possibly another attorney, has/have also been retained to prepare and file a complaint regarding the RICO Action.

62.     Significantly, Defendants over the past several years have repeatedly requested

that Plaintiff retain or hire Quinonez to help represent the Defendants herein, and Quinonez even agreed to work on a contingency basis, but Plaintiff repeatedly declined due to Quinonez' stated lack of bankruptcy, real estate and federal court experience.

63.     Thus, Defendants herein engaged in a fraudulent scheme whereby Defendants entered into the Agreement and/or the RICO Agreement, and allowed Plaintiff to continue performing in accordance with  the Agreement and/or the RICO Agreement, without any intention of fully complying with the terms of the Agreement and/or RICO Agreement, and thereby intending to deceive Plaintiff, as part of Defendants' fraudulent scheme to (a) cause Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, by causing Plaintiff to rely, to Plaintiff's detriment, on the above-described false and fraudulent oral and written statements of Defendants, (b) subsequently breach the Agreement and/or the RICO Agreement, by failing and/or refusing to pay Plaintiff the monthly amount due under the terms of said Agreement and/or the RICO Agreement, after Plaintiff had satisfactorily and substantially performed under the Agreement and/or the RICO Agreement, (c) then convert their bankruptcy case to Chapter 7, upon the advice of their bankruptcy counsel, in order to avoid the debt and contingency fee owed to Plaintiff under the Agreement and/or the RICO Agreement, (d) then take, convert and deliver Plaintiff's work product, without authorization, to another attorney, to pursue said RICO Action against Alicia Rojas, Francisco Jayme, and various other parties, while attempting to avoid the cost of preparing said work product, and the contingency fee due Plaintiff, so as to (e) deprive Plaintiff of the benefit of its labor, thereby causing Plaintiff to suffer financial injury and harm.

64.     The uncontroverted record is clear, Defendants committed fraud against Plaintiff, in order to obtain and convert the work product, produced by Plaintiff under the Agreement

and/or the RICO Agreement, without Defendants making all required payments under said Agreement and/or the RICO Agreement.  Specifically, Defendants induced Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, (a) knowing they would not fully comply with the Agreement and/or the RICO Agreement, and (b) then concealing from Plaintiff the fact that Defendants would not fully comply with the Agreement and/or the RICO Agreement.

65.     Moreover, Defendants appropriated and intentionally converted the work product created by Plaintiff herein, including the Third Amended Complaint, and the Draft Complaint provided to the Defendants, by Plaintiff, and delivered it to Quinonez, without authorization, which Quinonez obviously used to prepare the NM Complaint.

66.     Upon information and belief, Defendants and Quinonez also utilized the services of a former key employee of Plaintiff, who was hired at the specific request of Defendants, and had signed a covenant not to compete, so as to provide paralegal services to Quinonez, in order so that Quinonez could prepare and file the NM Complaint, and then prepare and file a complaint regarding the RICO Action.

67.     Thus, Defendants signed the Agreement and the RICO Agreement, allowing Plaintiff to perform under said contracts, and inducing Plaintiff to continue to perform under said contracts, all the while knowing they could or would breach the contracts, and thereby take, convert and deliver Plaintiff's work product to another attorney, without authorization, and then convert their bankruptcy case to Chapter 7, so as to attempt to avoid paying Plaintiff the debt and contingency fee due under the Agreement and/or the RICO Agreement, which amounts to false pretenses, false representations, and/or actual fraud.

D.      **The Outstanding Debt Owed By Defendants Was Obtained, By Defendants, Through Defendants' Use Of A Statement In Writing.**

68.      As demonstrated above, Defendants used written statements, concerning Defendants' financial condition, as Reorganized Debtors, on which Plaintiff reasonably relied, to induce Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, ostensibly in exchange for (a) Defendants making all required payments, and (b) Plaintiff receiving subject contingency fee, in accordance with the terms of the Agreement and/or the RICO Agreement, which Plaintiff reasonably relied up to Plaintiff's detriment.

69.      However, Defendants went to great lengths to hide, from Plaintiff, the fact that Defendants intended to (a) breach the Agreement and/or the RICO Agreement, by failing and/or refusing to pay Plaintiff the monthly amount due under the terms of said Agreement and/or RICO Agreement, after Plaintiff satisfactorily and substantially performed, under the Agreement and/or the RICO Agreement, (b) then convert their bankruptcy case to Chapter 7, upon the advice of their bankruptcy counsel, in order to avoid the debt and contingency fee owed to Plaintiff under the Agreement and/or the RICO Agreement, and (c) then take, convert and deliver Plaintiff's work product, without authorization, to another attorney, to pursue Defendants' RICO Action against Alicia Rojas, Francisco Jayme, and various other parties.

70.      The uncontroverted record is clear, Defendants used written statements, concerning Defendants' financial condition, on which Plaintiff reasonably relied, to induce Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, (a) knowing they would not fully comply with the Agreement and/or RICO Agreement, and (b) concealing from Plaintiff the fact that Defendants would not fully comply with the Agreement and/or RICO Agreement.  Thus, Defendants used written statements to

induce Plaintiff to enter the Agreement and/or the RICO Agreement, while knowing they would breach the contracts, and take and convert Plaintiff's work product, which amounted to the false and fraudulent use of a statement in writing.

**E.    The Outstanding Debt Owed By Defendants Was Created And Obtained, By Defendants, Through Defendants' Fraud Or Defalcation While Acting In A Fiduciary Capacity, Embezzlement, And/Or Larceny.**

71.    As demonstrated above, Defendants induced Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, ostensibly in exchange for (a) Defendants making all required payments, and (b) Plaintiff receiving subject contingency fee, in accordance with the terms of the Agreement and/or the RICO Agreement, which Plaintiff reasonably relied up to Plaintiff's detriment.

72.    However, Defendants went to great lengths to hide, from Plaintiff, the fact that Defendants intended to (a) breach the Agreement and/or the RICO Agreement by failing and/or refusing to pay Plaintiff the monthly amount due under the terms of said Agreement and/or the RICO Agreement, after Plaintiff had performed and was performing satisfactorily under the Agreement and/or the RICO Agreement, (b) then convert their bankruptcy case to Chapter 7, upon the advice of their bankruptcy counsel, in order to avoid the debt and contingency fee owed to Plaintiff under the Agreement and/or the RICO Agreement, and (c) then take, convert and deliver Plaintiff's work product, to another attorney, to pursue Defendants' causes of action against Alicia Rojas, Francisco Jayme, and various other parties.

73.    The uncontroverted record is clear, Defendants induced Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, (a) knowing they would not fully comply with the Agreement and/or RICO Agreement, and (b) concealing from

Plaintiff the fact that Defendants would not fully comply with the Agreement and/or RICO Agreement, in order to obtain, from Plaintiff, the work product produced, by Plaintiff, under the Agreement and/or the RICO Agreement, and then take, convert and deliver Plaintiff's work product, without authorization, to another attorney.  Thus, Defendants signed the Agreement and/or the RICO Agreement, and induced Plaintiff's substantial performance, while knowing they would breach the contracts, and then took, intentionally converted and delivered Plaintiff's work product, without authorization, to another attorney, which amounts to larceny.

**F.      The Outstanding Debt Owed By Defendants Was Obtained, By Defendants, Through Defendants' Willful And Malicious Injury To Plaintiff Herein.**

74.      As demonstrated above, Defendants induced Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, ostensibly in exchange for (a) Defendants making all required payments, and (b) Plaintiff receiving subject contingency fee, in accordance with the terms of the Agreement and/or the RICO Agreement, which Plaintiff reasonably relied up to Plaintiff's detriment.

75.      However, Defendants went to great lengths to hide, from Plaintiff, the fact that Defendants intended to (a) breach the Agreement and/or the RICO Agreement, by failing and/or refusing to pay Plaintiff the monthly amount due under the terms of said Agreement and/or the RICO Agreement, after Plaintiff had performed and was performing satisfactorily under the Agreement and/or the RICO Agreement, (b) then converted their bankruptcy case to Chapter 7, upon the advice of their bankruptcy counsel, in order to avoid the debt and contingency fee owed to Plaintiff under the Agreement and/or the RICO Agreement, and (c) then took, intentionally converted and delivered Plaintiff's work product, without authorization, to another attorney, to pursue Defendants' RICO Action against Alicia Rojas, Francisco Jayme, and various other

parties.

76.     The uncontroverted record is thus clear, Defendants induced Plaintiff to enter into, and substantially perform under, the Agreement and/or the RICO Agreement, (a) knowing they would not fully comply with the Agreement and/or RICO Agreement, and (b) concealing from Plaintiff the fact that Defendants would not fully comply with the Agreement and/or RICO Agreement. Thus, Defendants signed the Agreement and/or the RICO Agreement, and induced Plaintiff's substantial performance, while knowing they would breach the contracts, and take and convert Plaintiff's work product, without authorization, which amounted to willful and malicious conduct.

## G.     Defendants' Misstatements And Omissions In Defendants' Amended Schedules.

77.     As noted above, on October 7, 2015, Defendants filed their "Statement Of Changes In Schedules And Statement Of Affairs" (DOC# 232) (hereinafter referred to as the "Amended Schedules") in the bankruptcy case.

### 1.     Defendants Failed To Disclose All Real Properties Owned By Defendants.

78.     However, Defendants failed to disclose, on their Amended Schedule A, all real properties owned by the Defendants. Specifically, Defendants own, but failed to disclose to the Court, and their creditors, the following real properties:

> a.     Star Island Condo
> Vacation Break Resorts Time Share
> Timeshare at Star Island, 5000 Ave of Stars,
> Kissimmee, FL 34746 - Contract #83-35611,
> Unit/Week 19467/35; and,
>
> b.     Wyndham Vacation Resorts Time Share.

(DOC# 232, Page 5).

### 2. Defendants Falsely Claimed The Poplar Property As A Homestead.

79.     Included in Defendants' Amended Schedules was Defendants' Schedule A, in

which Defendants identified the Poplar Property as Defendants' homestead.  (DOC# 232, Page

5).

80.     To claim a property as a homestead, Defendants must (a) own or possess the

property, (b) prove Defendants intend to claim the property as a homestead, and (c) use the

property as a homestead.

81.     However, as discussed above, on June 7, 2004, Defendants filed the Poplar

Contract in the real property records of Dona Ana County, New Mexico.

82.     Under the Poplar Contract, Vela and Ramirez agreed to purchase the Poplar

Property, from Defendants, for Forty-Eight Thousand Dollars ($48,000.00), with a Four

Thousand Dollar ($4,000.00) down payment, and the remaining balance paid in monthly

installments of Four Hundred Dollars ($400.00).  (Poplar Contract, Section 2(A)).

83.     The Poplar Contract grants Vela and Ramirez the right to "take and retain

possession of the [Poplar] Property".  (Poplar Contract, Section 5).

84.     Although the Poplar Contract prevents Vela and Ramirez from selling or

conveying the Poplar Property without the prior approval of Defendants (Poplar Contract,

Section 6(B)), the Poplar Contract does not prohibit Vela or Ramirez from leasing the Poplar

Property to a third-party.  Additionally, the Poplar Contract recognizes the possibly that the

Poplar Contract may be terminated after Vela and Ramirez leased the Poplar Property to a third-

party.  (Poplar Contract, Section 8(H)) ("In the event the Property is rented, upon termination of Buyer's rights in the Property Buyer will provide an accounting to Seller of any prepaid rents and deposits received by Buyer from the Property, which obligation will survive termination.").

85.     Accordingly, Bernard Vela paid the water utility bill on the Poplar Property through February of 2013.

86.     For these reasons, in 2013, the Camino Real Regional Utility Authority, formerly the City of Sunland Park Utility, recognized Vela and Ramirez' ownership of the Poplar Property.

87.     Accordingly, Defendants do not hold a possessory interest in the Poplar Property, and Debtors have provided no documents reflecting termination or cancellation of the Poplar Contract.

88.     In any case, the Poplar Property is purportedly being rented by Defendants, and occupied by someone other than Defendants or the dependants of Defendants.  On Defendants' Schedule G, Defendants listed a "month to month" executory contract or unexpired lease, which Defendants are a party to, regarding the Poplar Party.  (DOC# 232, Page 27).  Defendants identified Jose Gomez as the other party to the executory contract or unexpired lease, and listed his address as the Poplar Property.  (DOC# 232, Page 27).

89.     Although Defendants failed to specifically state that Jose Gomez is the lessee under the executory contract or unexpired lease, Defendants list Four Hundred Dollars ($400.00) in monthly income from rental property, or from the operation of a business, profession, or farm. (DOC# 232, Page 30).  As Defendants have not listed any business, profession, or farm, as

currently owned or operated by Defendants, the Four Hundred Dollars ($400.00) in monthly income must come from rental property.  The executory contract or unexpired lease, with Jose Gomez, concerning the Poplar Property, is the only executory contract or unexpired lease Defendants list in their Amended Schedules.

90.     Additionally, the water utilities connected to the Poplar Property have been in the name of Jose Gomez since March of 2013.

91.     Accordingly, Jose Gomez is apparently paying Defendants a monthly rent, to lease the Poplar Property.

92.     Furthermore, at the October 19, 2015, Meeting of Creditors, Defendants admitted (a) they had previously sold the Poplar Property through a contract for deed, (b) they have a tenant currently residing on the Poplar Property, and (c) Defendants do not reside on the Poplar Property, as the following testimony shows:

| | |
|---|---|
| TRUSTEE: | And the homestead, Poplar, was that purchased sometime after the 11, because it's not on the 11 schedules. |
| ROSANA MONGE: | It's an old one.  It should have…. |
| TRUSTEE: | Is it? |
| ROSANA MONGE: | Oh, maybe the timing it was sold out. |
| TRUSTEE: | It was what? |
| ROSANA MONGE: | It was sold to somebody but they didn't pay it. |
| TRUSTEE: | Oh, so you had a note.  So you had a contract for deed, but that's where you live now?  Is that where you live? |
| ROSANA MONGE: | No, we're homeless. |
| BUD KIRK: | They're temporarily with friends but they intend to go back. |

| | |
|---|---|
| TRUSTEE: | Does anyone else live there? |
| BUD KIRK: | There's a tenant in there now. |
| TRUSTEE: | Are you really gonna go back and live there? |
| ROSANA MONGE: | Do we have another choice? |
| JOE MONGE: | We're homeless. |
| TRUSTEE: | Okay. |

(Recording of Meeting of Creditors, October 19, 2015, 16:24-17:22).

93.     As the Poplar Property is being leased by Jose Gomez, with Defendants as the lessors, Defendants are not residing on the Poplar Property.

94.     Furthermore, the dependants of Defendants do not reside on the Poplar Property. On Defendants' Amended Schedules, Defendants list three (3) dependants: (a) Defendants' son, Joseph J. Monge, Jr., (b) Joseph J. Monge III, and (c) Joanna Chaparro.  (DOC# 232, Page 31). Joseph J. Monge III is the minor child of Joseph J. Monge, Jr. and his common law wife, Joanna Chaparro.

95.     Upon information and belief, Joseph J. Monge, Jr., Defendants' son, currently resides at 343 N. Marin Privado, Ontario, California 91764, along with his son, Joseph J. Monge III and his common law wife, Joanna Chaparro.

96.     Thus, as Defendants have no possessory interest in the Poplar Property, and neither Defendants nor the dependants of Defendants reside on the Poplar Property, Defendants cannot claim the Poplar Property as a homestead.

### 3.     Defendants Falsely Stated The Value Of Their Vehicles.

97.     On or about May 20, 2014, Defendant ROSANA MONGE purchased a 2015

Nissan Versa (hereinafter referred to as the "Nissan").  Specifically, on May 20, 2014, Defendant ROSANA MONGE filed, with Capital One Auto Finance, a Retail Installment Sale Contract – Simple Finance Charge (With Arbitration Provision), requesting an auto loan to purchase the Nissan.

98.    At the time of purchase, May 20, 2014, the Nissan had a sale price of Fourteen Thousand Eight Hundred Dollars ($14,800.00).

99.    On Defendants' Amended Schedules, Defendants list the Nissan as an asset having Zero Dollars ($0.00) in value, but with an amount of $14,639.15 still due and owing. (DOC# 232, Pages 8, 11, and 13).

100.    Yet, the Defendants intend to reaffirm the debt of $14,639.15 still due and owing on the Nissan, which is wholly inconsistent with the Defendants' claimed value of Zero Dollars ($0.00).  Undoubtedly, the true value of the Nissan exceeds the purported Zero Dollars ($0.00) value listed on Defendants' Amended Schedules.

101.    Similarly, Defendants list, on their Amended Schedules, a 2005 Sonata Hyundai (hereinafter referred to as the "Sonata"), which Defendants claim is "broken", as an asset having a value of Two Hundred and Fifty Dollars ($250.00).  (DOC# 232, Pages 8, 11, and 13).  Yet, the blue book value of such a vehicle ranges from $6,000.00 to $10,000.00, so Defendants are obviously undervaluing the Sonata.

102.    Thus, Defendants falsely stated the value of the Nissan and the Sonata on their Amended Schedules.

### 4.    Defendants Falsely Claimed Exemptions On Their Vehicles.

103.     Debtors' Schedule C, included in the Amended Schedules, claimed exemptions, under 11 U.S.C. §522(d)(2), for two (2) vehicles, the above-described Nissan and Sonata. (Amended Schedules, DOC# 232, Page 11).

104.     As discussed above, Debtors claimed the Nissan has a Zero Dollar ($0.00) value, and claimed that while the Sonata has a value of Two Hundred Fifty Dollars ($250.00), it is "broken".  (Amended Schedules, DOC# 232, Page 11).

105.     However, on January 22, 2016, Debtor ROSANA MONGE testified in a Rule 2004 Examination that Debtors have given the Nissan and Sonata to Debtors' adult children, who are currently driving the above-described vehicles.

106.     As Debtors have, in effect, given away the Nissan and Sonata, Debtors cannot claim exemptions for the Nissan and Sonata, as the Nissan and Sonata are no longer part of Debtors' Estate.

107.     Additionally, as the Sonata is being driven by one of Debtors' children, the Sonata is not "broken", as Debtors have claimed.

108.     Thus, Defendants falsely claimed exemptions for the Nissan and the Sonata, on their Amended Schedules.

**5.     Defendants Falsely Listed Creditors Who Had Already Been Paid.**

109.     Defendants listed over thirty (30) creditors on Defendants' Amended Schedules. (DOC# 232, Pages 12-26).

110.     The creditors listed on Defendants' Amended Schedules include nearly every creditor Defendants had previously listed on their Schedules, (DOC# 24, Pages 11-14), which

have already been paid.

111.     Specifically, in their Motion To Convert, Defendants claimed their previous bankruptcy attorney had "drafted a full-pay Chapter 11 Plan of Reorganization for the Debtors. It was confirmed on July 13, 2010.  There were two large real estate notes involved in the Plan. (The other debts were in minor amounts, which have since been paid.)".  (DOC# 212, Page 1, Section 3).

112.     Accordingly, Defendants included, on their Amended Schedules, creditors which had already been paid through Defendants' Chapter 11 Plan of Reorganization.

113.     Thus, Defendants falsely included creditors on Defendants' Amended Schedules.

**6.     Defendants Falsely Stated Their Income.**

114.     Defendants listed a monthly income of Ten Thousand Eight Hundred Fifty-One Dollars and Twenty-Three Cents ($10,851.23) on Defendants' Amended Schedules.  (DOC# 232, Page 30, Line 12).

115.     Defendants' listed monthly income includes Four Hundred Dollars ($400.00) in "[n]et income from rental property and from operating a business, profession, or farm".  (DOC# 232, Page 30, Line 8a).

116.     As discussed above, Defendant ROSANA MONGE testified, at the October 19, 2015, Meeting of Creditors, that Defendants have a tenant currently residing on the Poplar Property.

117.     Additionally, Defendant ROSANA MONGE testified in a Rule 2004 Examination that the monthly rental amount, on the Poplar Property, is actually the amount of Six Hundred

Fifty Dollars ($650.00).

118.     Accordingly, by claiming monthly income of only Four Hundred Dollars ($400.00), Defendants failed to disclose an additional Two Hundred Fifty Dollars ($250.00) in monthly income.

119.     Furthermore, Defendants were required to document their "[n]et income from rental property" by attaching, to their Amended Schedules, "a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income."  (DOC# 232, Page 30, Line 8a).

120.     However, no such documentation was attached to Defendants' Amended Schedules.

121.     Thus, as Defendants failed to disclose Two Hundred Fifty Dollars ($250.00) in monthly rental income, and failed to attach the required documentation supporting Defendants' claim, Defendants falsely stated their income on their Amended Schedules.

**7.     Defendants Falsely Claimed Three (3) Dependants.**

122.     As discussed above, on Defendants' Amended Schedules, Defendants listed, on their Schedule J, three (3) dependants who currently reside at 343 N. Marin Privado, Ontario, California 91764.

123.     The Schedule J instructed Defendants to list the relationship of each dependant to Defendants, list the age of each dependant, and to "not state the dependants' names".  (DOC# 232, Page 31).  However, on the Schedule J, Defendants listed the names of each dependant, without listing the dependants' relationship to Defendants, or the dependants' ages.

124.    However, all of Defendants' children are adults, and the dependents listed on the Schedule J include Defendants' adult son, his adult girlfriend, and one (1) of Defendants' two (2) grandchildren.[3]

125.    Additionally, Defendants listed the dependants as not living with Defendants. (DOC# 232, Page 31).

126.    Furthermore, on Defendants' list of their monthly expenses, Defendants listed Zero Dollars ($0.00) spent each month "to support others who do not live with you" (DOC# 232, Page 32, Line 19).

127.    As Defendants admit the listed dependants do not live with Defendants, and Defendants do not spend money "to support others who do not live with" Defendants, Defendants falsely listed three (3) dependants on their Amended Schedules.

## H.    Defendants Filed Misstatements And Omissions In Defendants' Form 22A-1.

128.    On October 7, 2015, Defendants filed their "Office Form 22A-1 Chapter 7 Statement of Your Current Monthly Income" (DOC# 233) (hereinafter referred to as the "Statement Of Monthly Income").

### 1.    Defendants Falsely Claimed Texas Residency.

129.    On Defendants' Statement Of Monthly Income, Defendants claimed to reside in Texas.  (DOC# 233, Page 2, Line 13).

130.    However, as discussed above, while claiming Texas residency, Defendants claim the Poplar Property as their homestead, despite the fact that the Poplar Property is located in

---

[3]  At the Rule 2004 Examination on January 22, 2016, Debtor ROSANA MONGE testified that her son, Joseph J. Monge III, and his common law wife, Joanna Chaparro, now also have a second child, just recently born.

New Mexico, and Defendants do not reside at the Poplar Property.

131. Additionally, as discussed above, Defendants do not claim, on their Amended Schedules, to be a party to any executory contract or unexpired lease, except for the lease on the Poplar Property, with Jose Gomez, in which Defendants are the lessors. Defendants have not claimed any other real property, in the State of Texas, as a residence.

132. Furthermore, Defendants are known to reside at real property located at 343 N. Marin Privado, Ontario, California 91764.

133. Accordingly, Defendants (a) falsely claimed they are residents of the State of Texas, (b) falsely claimed a Homestead in the State of New Mexico, and (c) falsely failed to state they are truly residents of the State of California.

**2.      Defendants Falsely Stated Their Income.**

134. Defendants listed, on their Statement Of Monthly Income, a monthly income of Six Thousand Six Hundred Seven Dollars and Twenty-Three Cents ($6,607.23) (DOC# 233, Page 2, Line 12a), with an annual income of Seventy-Nine Thousand Two Hundred Eighty-Six Dollars and Seventy-Six Cents ($79,286.76) (DOC# 233, Page 2, Line 12b).

135. As discussed above, Defendants' claimed monthly income of Four Hundred Dollars ($400.00) in rental income from the Poplar Property, on their Amended Schedules (DOC# 232, Page 30, Line 8a), and Defendant ROSANA MONGE testified, in a Rule 2004 Examination, that the monthly rent on from the Poplar Property is actually Six Hundred Fifty Dollars ($650.00).

136. However, in calculating their monthly income, on their Statement Of Monthly

Income, Defendants did not include any rental income.  Specifically, Defendants claimed to receive Zero Dollars ($0.00) in income, both gross income and net income, "from rental and other real property".  (DOC# 233, Page 1, Line 6).

137.    Thus, as Defendants failed to disclose their monthly rental income, Defendants falsely stated their income on their Statement Of Monthly Income.

### 3.    Defendants Falsely Stated Their Family Size.

138.    As discussed above, Defendants falsely claimed three (3) dependants on their Amended Schedules.

139.    Defendants repeated the false claim on their Statement Of Monthly Income, by claiming they had five (5) members in their household (DOC# 233, Page 2, Line 13)

140.    However, all of Defendants' children are adults, and the dependents listed on the Schedule J include (a) Defendants' adult son, (b) his adult girlfriend, and (c) one (1) of Defendants' two (2) grandchildren.  Defendants listed the dependents despite the fact that Defendants admit the claimed dependants do not live with Defendants (DOC# 232, Page 31), and on Defendants' list of their monthly expenses, Defendants listed Zero Dollars ($0.00) spent each month "to support others who do not live with you" (DOC# 232, Page 32, Line 19).

141.    Accordingly, as the claimed dependants are not at all dependants of Defendants, the family size of Defendants is actually two (2).

142.    Thus, Defendants falsely stated their family size on their Statement Of Monthly Income.

### 4.    Defendants Falsely Stated Their Residency, Income, And Family Size In

**Order Avoid A Presumption Of Abuse.**

143.    As discussed above, Defendants falsely claimed (a) Texas residency (DOC# 233, Page 2, Line 13), (b) an annual income of Seventy-Nine Thousand Two Hundred Eighty-Six Dollars and Seventy-Six Cents ($79,286.76) (DOC# 233, Page 2, Line 12b), and (c) five (5) members in their household (DOC# 233, Page 2, Line 13), on their Statement Of Monthly Income.

144.    Defendants also claim a median family annual income, in Texas, for a family of five (5), as Eighty Thousand Seventy-Three Dollars ($80,073.00) (DOC# 233, Page 2, Line 13). Accordingly, Defendants claim there is no presumption of abuse as said median family income is above the amount of annual income falsely claimed by Defendants.  (DOC# 233, Page 2, Line 14a).

145.    If Defendants had claimed to reside in New Mexico with a household of five (5), or claimed to reside in Texas, New Mexico, or California, with a household of two (2), or reported the true value of their income, Defendants' annual income would be above the median annual income for Defendants' reported state and family size, as shown in the following table:

| Median Family Income By Family Size | | |
|---|---|---|
| **State** | **Two Members** | **Five Members** |
| Texas | $    58,666.00 | $    80,073.00 |
| New Mexico | $    54,251.00 | $    70,940.00 |
| California | $    64,779.00 | $    87,518.00 |

146.    Thus, Defendants falsely claimed to reside in Texas, falsely stated their income, and falsely claimed to be part of a household of five (5), in order to keep their reported annual

income below the median family income, so as to avoid a presumption of abuse.

**I.      Defendants, In The Meeting of Creditors, Confirmed Their Misstatements And Omissions In Their Amended Schedules.**

147.    On October 19, 2015, Defendants attended a Meeting of Creditors, in the

bankruptcy case.

148.    At the Meeting of Creditors, Defendants confirmed all of the above-described

misstatements and omissions contained in their Amended Schedules, as the following testimony

shows:

> TRUSTEE:              To the best of your knowledge, is all that information [in the Schedules and Petition] confirmed?
>
> ROSANA MONGE:    Yes.
>
> TRUSTEE:              Did you list all of your assets?
>
> ROSANA MONGE:    Yes.

(Recording of Meeting of Creditors, October 19, 2015, 02:55-03:03).

149.    Accordingly, as Defendants confirmed all the information contained in their

Bankruptcy Petition and Amended Schedules, at the Meeting of Creditors, Defendants falsely

testified, sworn under oath at the Meeting of Creditors, all the misstatements and omissions

contained in Defendants' Amended Schedules.

**J.      Defendants Failed And/Or Refused To File Federal Tax Returns.**

150.    On January 7, 2016, and January 22, 2016, Debtors' counsel, E.P. Bud Kirk,

confirmed that Defendants had not filed their Federal Income Tax Returns for 2012, 2013, 2014,

or 2015.

151.    On January 22, 2016, Debtor ROSANA MONGE testified in a Rule 2004 Examination that Defendants had not filed their Federal Income Tax Returns for 2012, 2013, 2014, or 2015.

152.    Also on January 22, 2016, Debtors failed to produce at their Rule 2004 Examination any request for extension to the due date for filing any of the Debtors Federal Income Tax Returns for 2012, 2013, 2014, or 2015.

153.    To this date, Debtors have failed and/or refused to comply with the Federal Income Tax Law, by not filing their (a) Federal Income Tax Returns for the years 2012, 2013, 2014, or 2015, and/or (b) requests for extension to the due date for filing of their Federal Income Tax Returns for the years 2012, 2013, 2014, or 2015.

154.    Moreover, it remains unclear as to whether Debtors have even paid any Federal Income Taxes due for the years 2012, 2013, 2014, or 2015.

155.    The penalty for failure to provide the required tax return is dismissal of the case, unless the debtor demonstrates that the failure to file the required returns was due to circumstances beyond the debtor's control.  11 U.S.C. § 521(e)(2)(B), (C).

156.    Here, Debtors simply cannot show that their failure to file either their Federal Income Tax Returns for the years 2012, 2013, 2014, or 2015, or any requests for extension to the due date for filing of their Federal Income Tax Returns for 2012, 2013, 2014, or 2015.

157.    Accordingly, the Debtors' bankruptcy case should be dismissed in accordance with 11 U.S.C. § 521, without discharge.

**K.** **Defendants Failed And/Or Refused To Obey A Lawful Order Of The Court.**

158.    On October 23, 2015, Plaintiff sent two (2) meet and confer letters to Counsel for Defendants, as notification of Plaintiff's intention to arrange Rule 2004 Examinations of Defendants on November 9, 2015.

159.    However, Defendants failed and refused to voluntarily present themselves for Rule 2004 Examinations, or provide requested documents to Plaintiff prior to or at said Examinations.  (DOC #246).

160.    Therefore, on November 25, 2015, Plaintiff filed, in this bankruptcy case, the "Motion To Compel Rule 2004 Examinations Of Debtors" (DOC# 260) (hereinafter referred to as the "Motion To Compel"), seeking to compel Defendants to present themselves for Rule 2004 Examinations, and provide requested documents to Plaintiff at said Examinations.

161.    On December 10, 2015, the Bankruptcy Court issued an "Order Regarding (A) Motion To Compel 2004 Examinations; (B) Motion For Protective Order; (C) Motion To Extend Deadline To Object To Exemptions; And (D) Motion To Extend Deadline To Object To Discharge And Dischargeability" (DOC# 282) (hereinafter referred to as the "Rule 2004 Order"), which granted the Motion To Compel, and compelled Defendants to present themselves for Rule 2004 Examinations, and provide requested documents to Plaintiff at said Examinations.

162.    However, to this date, Defendants have failed and/or refused to fully comply with the Rule 2004 Order, as (a) Defendants have still not produced all of the documents requested by Plaintiff, (b) Defendant Rosanna Monge failed and refused to testify fully and truthfully, and (c) failed and refused to answer numerous questions during the Rule 2004 Examination.

163.    Furthermore, Defendant Rosanna Monge also evaded numerous questions, apparently in an effort to really "get back" at Plaintiff's counsel.

164.    Accordingly, Defendant Rosanna Monge failed and/or refused to fully comply with the Rule 2004 Order.[4]

165.    Therefore, the Court should deny the discharge of Defendants, due to the refusal and failure of the Defendants to comply with the Rule 2004 Order.

**L.    Defendants' Statements And Schedules Are "Inconsistent" And Not "Believable."**

166.    As noted above, Defendants have provided numerous conflicting Statements and Schedules that were submitted to this Court under penalty of perjury.

167.    However, as this Court previously noted in its "Proposed Findings Of Fact And Conclusions Of Law With Respect To Trial In Adversary Proceeding No. 10-03019":

> . . . in the Court's view Ms. Monge then stretched the truth in many instances on the ancillary properties and transactions at issue (Country Cove Subdivision, Transmountain Property, and Sierra Crest Property) — apparently in an effort to really "get back" at Rojas/Jayme.  Her testimony regarding the lack of the Monges' signatures on various documents was inconsistent and not entirely believable.  Ms. Monge's testimony on the Country Cove Subdivision project was very inconsistent and largely unintelligible.  Ms. Monge also evaded questions and provided testimony that was not consistent with documents, particularly with regard to the Country Cove Subdivision, Transmountain Property, and Sierra Crest Property.  In short, Ms. Monge's testimony left the Court uncomfortably numb.  Although the Court is sympathetic to Ms. Monge's situation, the Court gives limited credibility to the testimony of Ms. Monge.

(AP DOC# 364, Pages 14 and 15).

168.    In view of the numerous conflicting Statements and Schedules submitted to this Court, this Court should remain "uncomfortably numb" and give "limited credibility" to the

---

[4]  Defendant JOE MONGE stated he did not feel well enough to testify at the Rule 2004 Examination.

numerous conflicting Statements and Schedules submitted by Defendants.

169.     Accordingly, the Court should deny the discharge of Defendants, in view of the "inconsistent and not entirely believable" information supplied by Defendants in their numerous conflicting Statements and Schedules.

## V.     OBJECTION TO DISCHARGE OF DEBTOR UNDER 11 U.S.C. §727.

170.     **Transferring, Removing, Or Concealing Property.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the discharge of Defendants is barred under §727(a)(2) of the Bankruptcy Code, because Defendants, knowingly and fraudulently, in the bankruptcy case, with the intent to hinder, delay, or defraud a creditor, transferred, removed, or concealed, or permitted to be transferred, removed, or concealed, the Nissan and the Sonata, by effectively giving the Nissan and the Sonata to Defendants' children.  11 U.S.C. §727(a)(2) ("The court shall grant the debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.").

171.     **Concealing Or Falsifying Recorded Information.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the discharge of Defendants is barred under §727(a)(3) of the Bankruptcy Code, because Defendants, knowingly and fraudulently, in the bankruptcy case, concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents,

records, and papers, from which Defendants' financial condition or business transactions might be ascertained, concerning (a) the real properties excluded from Defendants' Schedules; (b) the executory contracts and unexpired leases excluded from Defendants' Schedules; (c) the real properties excluded from Defendants' Amended Schedules; (d) the Poplar Property falsely listed as a homestead on Defendants' Amended Schedules; (e) the value of the vehicles listed on Defendants' Amended Schedules; (f) the exemptions falsely claimed for the vehicles listed on Defendants' Amended Schedules; (g) the creditors listed on Defendants' Amended Schedules; (h) the income reported on Defendants' Amended Schedules; (i) the three (3) dependants on Defendants' Amended Schedules; (j) Defendants' true residency; (k) the income reported on Defendants' Statement Of Monthly Income; and, (l) Defendants' household size.  11 U.S.C. §727(a)(3) ("The court shall grant the debtor a discharge, unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.").

172.  **False Oath Or Account.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the discharge of Defendants is barred under §727(a)(4)(A) of the Bankruptcy Code, because Defendants, knowingly and fraudulently, in the bankruptcy case, made a false oath or account, on the basis that Defendants (a) failed to list all properties owned on their Schedules; (b) failed to list all executory contracts and unexpired leases on their Schedules; (c) failed to list all properties owned on their Amended Schedules; (d) falsely claimed to own the Poplar Property as a homestead on their Amended Schedules; (e) falsely listed the value of their vehicles on their Amended Schedules; (f) falsely claimed exemptions for the vehicles listed on Defendants' Amended

Schedules; (g) falsely listed creditors, who had already been paid, on their Amended Schedules; (h) falsely stated their income on their Amended Schedules; (i) falsely claimed three (3) dependants on their Amended Schedules; (j) falsely claimed Texas Residency on their Statement Of Monthly Income; (k) falsely stated their income on their Statement Of Monthly Income; (l) falsely claimed to be a household of five (5) on their Statement Of Monthly Income; (m) falsely stated their true residency, income, and family size, on their Statement Of Monthly Income, in order avoid a presumption of abuse, and falsely testified at the Meeting of the Creditors, and at the Rule 2004 Examination.  11 U.S.C. §727(a)(4)(A) ("The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account.").

173.  **Withholding Recorded Information.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the discharge of Defendants is barred under §727(a)(4)(D) of the Bankruptcy Code, because Defendants, knowingly and fraudulently, in the bankruptcy case, withheld, from an officer of the estate, recorded information regarding Defendants' financial affairs, on the basis that Defendants withheld, from the Court and Trustee, all recorded information concerning (a) the real properties excluded from Defendants' Schedules; (b) the executory contracts and unexpired leases excluded from Defendants' Schedules; (c) the real properties excluded from Defendants' Amended Schedules; (d) the Poplar Property falsely listed as a homestead on Defendants' Amended Schedules; (e) the value of the vehicles listed on Defendants' Amended Schedules; (f) the exemptions falsely claimed for the vehicles listed on Defendants' Amended Schedules; (g) the creditors listed on Defendants' Amended Schedules; (h) the income reported on Defendants' Amended Schedules; (i) the three (3) dependants on Defendants' Amended Schedules; (j)

Defendants' true residency; (k) the income reported on Defendants' Statement Of Monthly Income; and, (l) Defendants' household size.  11 U.S.C. §727(a)(4)(D) ("The court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.").

174.  **Refusing To Obey A Lawful Order Of The Court.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the discharge of Defendants is barred under §727(a)(6)(A) of the Bankruptcy Code, because Defendants, knowingly and fraudulently, in the bankruptcy case, refused to obey a lawful Order of the Court, by (a) refusing to comply with the Rule 2004 Order, and (b) refusing to testify fully and truthfully.  11 U.S.C. §727(a)(6)(A) ("The court shall grant the debtor a discharge, unless the debtor has refused, in the case to obey any lawful order of the court, other than an order to respond to a material question or to testify.").

## VI.  OBJECTION TO DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. §523.

175.  **False Pretenses, False Representation, or Actual Fraud.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the outstanding debt and contingency fee owed by Defendants, to Plaintiff, is non-dischargeable under §523(a)(2)(A) of the Bankruptcy Code, because the outstanding debt of **Three Hundred Eleven Thousand One Hundred Seventy-Seven Dollars and Ninety-Three Cents ($311,177.93), and the contingency fee due Plaintiff,** is for money, property, and services, obtained by Defendants, through Defendants' false pretenses, false representations, and/or actual fraud, which Plaintiff reasonably relied up to Plaintiff's detriment.  11 U.S.C. §523(a)(2)(A).

176.  **Use of a Statement in Writing.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the outstanding debt and contingency fee owed by Defendants, to Plaintiff, is non-dischargeable under §523(a)(2)(B) of the Bankruptcy Code, because the outstanding debt of **Three Hundred Eleven Thousand One Hundred Seventy-Seven Dollars and Ninety-Three Cents ($311,177.93), and the contingency fee due Plaintiff,** is for money, property, and services, obtained by Defendants, through Defendants' use of a statement in writing (a) that is materially false; (b) respecting Defendants' financial condition; (c) on which Plaintiff, to whom Defendants are liable for such money, property, services, or credit, reasonably relied; and (d) that Defendants caused to be made or published with intent to deceive, which Plaintiff reasonably relied up to Plaintiff's detriment.  11 U.S.C. §523(a)(2)(B).

177.  **Fraud or Larceny.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the outstanding debt and contingency fee owed by Defendants, to Plaintiff, is non-dischargeable under §523(a)(4) of the Bankruptcy Code, because the outstanding debt of **Three Hundred Eleven Thousand One Hundred Seventy-Seven Dollars and Ninety-Three Cents ($311,177.93), and the contingency fee due Plaintiff,** is for money, property, and services, obtained by Defendants, through Defendants' fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny, which Plaintiff reasonably relied up to Plaintiff's detriment.  11 U.S.C. §523(a)(4).

178.  **Willful and Malicious Injury.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the outstanding debt and contingency fee owed by Defendants, to Plaintiff, is non-dischargeable under §523(a)(6) of the Bankruptcy Code, because the outstanding debt of **Three Hundred Eleven**

**Thousand One Hundred Seventy-Seven Dollars and Ninety-Three Cents ($311,177.93), and the contingency fee due Plaintiff,** is for money, property, and services, obtained by Defendants, through Defendants' willful and malicious injury to Plaintiffs herein, which Plaintiff reasonably relied up to Plaintiff's detriment.  11 U.S.C. §523(a)(6).

**VII.     OBJECTION TO DISCHARGEABILITY OF DEBT AS A MATTER OF LAW.**

**A.     Plaintiff Was Hired By Defendants, As Reorganized Debtors, Outside The Estate.**

179.     As discussed above, on July 13, 2010, the Bankruptcy Court issued an "Order Confirming Debtors' Chapter 11 Plan Small Business (Small Business Debtor Case)" (DOC# 97), thereby confirming Defendants' bankruptcy Plan.

180.     Defendants herein have admitted that upon confirmation of Defendants' bankruptcy plan, Defendants' bankruptcy estate ended.  (DOC# 301, Page 1, Paragraph 3) ("Once a Plan of reorganization is confirmed, the debtors cease to be debtors-in-possession, and the bankruptcy estate ends.").

181.     The United States Trustee also recognizes that "the court entered an order confirming the Amended Plan", and stipulates that "[t]herefore, all property of the estate vested in the debtors. 11 U.S.C. § 1141(b)(2)."  (DOC# 307, Page 2, Paragraph No. 3) ("On July 23, 2010, the court entered an order confirming the Amended Plan was entered.  The Plan did not provide that any property remained in the estate.  Therefore, all property of the estate vested in the debtors.").

182.     Subsequent to this Court's confirmation of the Plan, Defendants entered into subject Agreement with Plaintiff on September 7, 2011, wherein Defendants agreed to hire Plaintiff to represent Defendants in the AP, and therefore Plaintiff was charged with protecting, enhancing and recovering "all property of the estate vested in the debtors", as counsel of record in the AP.

183.    On March 13, 2015, the RICO Agreement was executed by Defendants and Plaintiff, and therefore Plaintiff was again charged with protecting, enhancing and recovering "all property of the estate vested in the debtors", as counsel for the RICO Action.

184.    Accordingly, as Defendants executed the Agreement, and/or the RICO Agreement, after confirmation of Defendants' bankruptcy plan, Plaintiff was hired, by Defendants, outside of Defendants' estate, and charged with protecting, enhancing and recovering "all property of the estate vested in the debtors".

**B.     Plaintiff Holds A Claim Against Defendants, Outside The Estate, As Well As A Legal, Statutory, And Equitable Lien, For Proceeds From The Final Judgment Proceeds, And For A Percentage Of The Proceeds From Any RICO Action.**

185.    Under the express terms of the Agreement, and the RICO Agreement, as security agreements, and the constitution and laws of the State of Texas, and the United States of America, and under *quantum meruit*, Plaintiff was granted statutory, contractual, and equitable liens on any cash, checks, monies, proceeds, or other property that may be received and/or recovered, or resulting from any arbitration, litigation, or settlement of any of the work performed by Plaintiff, and/or from the Final Judgment (a) filed in the United States District Court for the Western District of Texas (El Paso Division), (b) registered in the United States District Court for the District of New Mexico, and (c) registered in the Third Judicial District Court of Dona Ana County, New Mexico.

186.    On October 23, 2015, the Trustee filed a "Notice Of Abandonment Of Debtor's Personal Property Pursuant To Bankruptcy Rule 6007(a) (Including 21-Day Notice)" (DOC# 240) (hereinafter referred to as the "Notice Of Abandonment"), notifying the Court of the Trustee's intention to abandon the following property:

All litigation rights and claims which the Debtors have pending against Alicia Rojas (aka

Alicia Jayme, aka Alicia Rejas de Jayme) and Francisco Javier Jayme (aka Francisco J. Jayme) in the United States Court of Appeals for the Fifth Judicial Circuit (appeal from USDC No. 3:14-CV-305), in the United States Bankruptcy Court for the Western District of New Mexico (Case No. 15-10504-t7), in the Third Judicial District Court, Dona Ana County, New Mexico (D-307-CV -200700398), as well as any other claims, filed or yet to be filed in any court, related to the foregoing litigation, against Alicia Rojas and Francisco Javier Jayme and/or any third parties who acted in concert with them.

(hereinafter referred to as the "Abandoned Property").

187.    No objection to the Notice Of Abandonment was filed by any interested party or creditor.  Accordingly, as the time to file an objection to the Notice Of Abandonment has passed, the Abandoned Property has been legally and officially abandoned by the Trustee.

188.    On January 22, 2016, Plaintiff filed its "Proof of Claim" (Claim #21) (hereinafter referred to as the "Claim"), asserting a claim of Three Hundred Eleven Thousand One Hundred Seventy-Seven Dollars and Ninety-Three Cents ($311,177.93), owed by Defendants, to Plaintiff, and secured by statutory, contractual, and equitable liens, under the express terms of the Agreement, and the RICO Agreement, as security agreements, and the constitution and laws of the State of Texas, and the United States of America, and under *quantum meruit*, on the Abandoned Property.

**C.     The Property Was Abandoned, And Therefore Plaintiff's Claim And Statutory, Contractual, And Equitable Liens Followed The Abandoned Property Out Of The Estate.**

   **1.     When The Property Was Abandoned To Defendants, The Chapter 7 Estate Lost All Interest And Rights In The Abandoned Property.**

189.    When the Trustee abandoned the Property, the Property was abandoned to Defendants, and ceased to be part of the Estate.  The effect of abandonment by a trustee is to divest the trustee of control over the property, because once abandoned, property is no longer a part of the bankruptcy estate.  Additionally, when property of the estate is abandoned by a trustee, it is abandoned to the debtor as a matter of law, as the act of abandonment is the irrevocable removal of

property from the estate.

190.     By extension, when property of the estate is abandoned by a trustee, it is removed

from the jurisdiction of the bankruptcy court as a matter of law, because the act of abandonment is

the irrevocable removal of property from the estate.

**2.      A Lien Remains Attached To Property Following Abandonment.**

191.     Bankruptcy law holds that when property is abandoned by a bankruptcy estate, any

liens on the property survive abandonment, and remain attached to the abandoned property.  In

other words, following abandonment of property by a trustee, any lien survives the discharge and

remains an encumbrance against the property of the debtor.  In effect abandonment re-vests title to

any liens in the person holding a possessory interest in the property.

**3.      The Bankruptcy Court Here Thus Lacks Jurisdiction Over Plaintiff's Lien.**

192.     As noted above, when the Abandoned Property was abandoned by the Trustee

herein, the Trustee lost all control over the Abandoned Property, and the Abandoned Property was

removed from the jurisdiction of this Court.

193.     Stated differently, once the Abandoned Property was abandoned by the Trustee, this

Court's jurisdiction ceased over matters concerning the Abandoned Property, because the Trustee

herein purposefully divested himself of control over the Abandoned Property, and therefore the

Abandoned Property is no longer part of the bankruptcy estate.

194.     Accordingly, the effect of the abandonment herein was to remove the Abandoned

Property from the jurisdiction of this Court, because the abandonment (a) removed the Abandoned

Property from the bankruptcy estate, (b) caused the Trustee to lose all interest, rights and control

with respect to the Abandoned Property, and (c) thereby deprived this Court of jurisdiction over the Abandoned Property.

195.    More importantly, perhaps, the effect of abandonment of the Abandoned Property by the Trustee herein not only divested this Court of jurisdiction over the Abandoned Property, but the abandonment effectively removed from this Court the jurisdiction to make any determination that would have an adverse legal effect upon the validity of the Plaintiff's liens encumbering the Abandoned Property.

196.    Therefore, the practical and legal effect of the abandonment was to remove the Abandoned Property and the Plaintiff's liens entirely from the jurisdiction of this Court, and therefore Plaintiff's liens must be held by this Court to survive the discharge, and remain an encumbrance against the Abandoned Property of the Defendants and Debtors herein.

**D.     As The Abandoned Property Was Entirely Removed From The Jurisdiction Of This Court, Plaintiff As A Matter Of Law Is Entitled To Pursue The Claim And Enforce The Lien Against Defendants In Another Court With Competent Jurisdiction.**

197.    Bankruptcy courts have long held that a trustee who abandons property may not abandon the burdens of that property, and at the same time retain the benefits of it.  On the same principle, bankruptcy courts similarly hold that a trustee who has renounced the possible benefits of an asset, should not be forced to retain a burden.

198.    Accordingly, as the Trustee herein has removed the possible benefits from the Abandoned Property entirely from the jurisdiction of this Court, Defendants should not be allowed to receive a windfall, while burdening the Estate, by requiring Plaintiff to pursue the Claim only against the Estate, and not against the Abandoned Property.

199.     Additionally, as Plaintiff's liens remain in effect against the Abandoned Property, and the Court is without jurisdiction over the Abandoned Property, Plaintiff as a matter of law is entitled to pursue an action to enforce the lien, and the Claim, against the Abandoned Property, in another court with competent jurisdiction.  As stated above, once the Abandoned Property was abandoned by the Trustee, this Court's interest in the Abandoned Property ceased, and any lien issues that arise should proceed under state law, and in another court with competent jurisdiction.  In short, abandonment herein was simply a declaration by the Trustee that the bankrupt estate wants nothing further to do with the Abandoned Property, and that the Plaintiff, as lien holder, is free to proceed on the lien, against the Defendants, just as normally would be applicable under state law.

200.     Thus, as this Court lacks jurisdiction over the Abandoned Property, the Court lacks jurisdiction to determine the validity, or invalidity, of (a) Plaintiff's Claim, (b) Plaintiff's contingent fee, and (c) Plaintiff's liens on the Abandoned Property.

201.     Plaintiff therefore respectfully request that this Court issue an Order holding that (a) this Court lacks jurisdiction over the Abandoned Property, (b) this Court lacks jurisdiction to determine the validity, or invalidity, of Plaintiff's Claim on the Abandoned Property, (c) this Court lacks jurisdiction to determine the validity, or invalidity, of Plaintiff's liens on the Abandoned Property, and (d) Plaintiff, as lien holder, is free to proceed to enforce the lien, against the Defendants, and any other third parties, in another court with competent jurisdiction.

## VIII.        ATTORNEYS FEES AND COSTS.

202.     Under the terms and provisions of the Agreement and/or the RICO Agreement, and under 11 USCS §§ 523 and 727, Plaintiff is entitled to the award of attorneys fees and costs, in the even Plaintiff is the prevailing party herein.

203.    Therefore, Plaintiff hereby requests the award of attorneys fees and costs, under the terms and provisions of the Agreement and/or the RICO Agreement, and under 11 USCS §§ 523 and 727, in the even Plaintiff is the prevailing party herein.

### IX.    PRAYER FOR RELIEF.

204.    **WHEREFORE, PREMISES CONSIDERED**, and for the foregoing reasons, Plaintiff herein requests and prays that Defendants be cited to appear and answer herein, and that after final trial on this matter, Plaintiff be awarded the following relief upon entry of Judgment against Defendants, to wit:

a.    Denial of Defendants' discharge under Title 11 of the United States Code; and/or,

b.    Determination of Plaintiff's Claim of Three Hundred Eleven Thousand One Hundred Seventy-Seven Dollars and Ninety-Three Cents ($311,177.93), and contingent fee, owed by Defendants to Plaintiff, as non-dischargeable; and/or,

c.    Determination (i) this Court lacks jurisdiction over the Abandoned Property, (ii) this Court lacks jurisdiction to determine the validity, or invalidity, of Plaintiff's Claim on the Abandoned Property, (ii) this Court lacks jurisdiction to determine the validity, or invalidity, of Plaintiff's liens on the Abandoned Property, and (iv) Plaintiff, as lien holder on the Abandoned Property, is free to proceed to enforce the liens, against the Defendants, and any other third parties, in another court with competent jurisdiction; and,

d.      Award of attorneys fees and costs to Plaintiff as the prevailing party; and,

e.      Any and all other further relief to which Plaintiff may be entitled, both at law

and in equity, which the Court deems appropriate, whether pled or unpled.

February 26, 2016                          Respectfully submitted,

                                           **The Law Offices of Michael R. Nevarez**
                                           A Professional Corporation
                                           5915 Silver Springs Drive,
                                           Bldg. 6, Suite B
                                           El Paso, Texas 79912
                                           Telephone: (915) 584-8000
                                           Facsimile:   (915) 584-8024
                                           Email: MNevarez@LawOfficesMRN.com

                                           /s/ Michael R. Nevarez_____
                                           By: MICHAEL R. NEVAREZ
                                           State of Texas Bar No. 14933400

                                           Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S ORIGINAL COMPLAINT TO OBJECT TO DISCHARGEABILITY OF DEBT, AND THE DISCHARGE OF DEBTORS** was served either by electronic means as listed on the Court's CM/ECF filing and noticing system, and/or via facsimile, and/or by regular first class mail, postage prepaid, to the following parties in interest, on or before February 26, 2016:

**COUNSEL FOR DEFENDANTS:**
E.P. Bud Kirk
600 Sunland Park Drive, Building 4, Suite 400
El Paso, TX 79912
Facsimile: 915-581-3452
Email: budkirk@aol.com

**TRUSTEE:**
Randolph N. Osherow
342 W. Woodlawn
San Antonio, TX 78212


/s/ Michael R. Nevarez
**MICHAEL R. NEVAREZ**